Filed 5/17/23 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SHERRY A. GLASSMAN,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>SAFECO INSURANCE COMPANY OF AMERICA,<br><br>  Defendant and Respondent. | H049825<br>(Santa Clara County Super. Ct. No. 21CV383782)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed herein on April 28, 2023, be modified as follows:

1.  On page 2, line 8, the word "Company" is to be inserted between the words "Insurance" and "of" so the sentence reads:

In this case, appellant Sherry A. Glassman prevailed in a UIM arbitration against respondent Safeco Insurance Company of America.

2. On page 3, the first two sentences of the first full paragraph are deleted and replaced with the following two sentences:

After Glassman petitioned the trial court to confirm the arbitration award, she also sought prejudgment interest under section 3287, subdivision (a) (section 3287(a)) from the date of her CCP section 998 offer. This subdivision provides a right to prejudgment interest when a person "is entitled to recover damages certain, or capable of being made certain by

calculation" (§ 3287(a)), and the right to recover is vested in the person on a particular day."

There is no change in judgment.

_____

WILLIAMS, J.*

_____

GROVER, ACTING P.J.

_____

LIE, J.

*Glassman v. Safeco Insurance Company of America*
H049825

_____

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| SHERRY A. GLASSMAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SAFECO INSURANCE COMPANY<br>OF AMERICA,<br><br>    Defendant and Respondent. | H049825<br>(Santa Clara County Super. Ct.<br>No. 21CV383782) |


Civil Code section 3291[1] addresses prejudgment interest in actions for personal injuries. It expressly incorporates the provisions of Code of Civil Procedure section 998 (CCP section 998), adding interest from the date of the offer as a recoverable item, claimed as a cost as opposed to an element of damages, if a plaintiff makes a CCP section 998 offer that the defendant does not accept, and the plaintiff ultimately obtains a more favorable judgment. (*Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc.* (1997) 60 Cal.App.4th 13, 18 (*Steinfeld*).) In *Pilimai v. Farmers Insurance Exchange Co.* (2006) 39 Cal.4th 133 (*Pilimai*), the California Supreme Court held that

---

[1] Except as otherwise noted, further unspecified statutory references are to the Civil Code.

uninsured motorist (UIM)[2] proceedings are not actions for personal injury sounding in tort to which section 3291 applies and that such proceedings are instead in the nature of an action in contract arising out of a policy of insurance. Thus, section 3291, incorporating the cost-shifting mechanisms of CCP section 998 and applying them to prejudgment interest in personal-injury actions from the date of the offer, does not apply in a UIM proceeding.

In this case, appellant Sherry A. Glassman prevailed in a UIM arbitration against respondent Safeco Insurance of America. The arbitration agreement was contained in a Safeco umbrella policy that provided excess UIM benefits, over and above those afforded by Glassman's concurrent Safeco auto-liability policy. Glassman had sustained significant bystander emotional-distress damages during the policy period after witnessing her mother's fatal injuries when an underinsured driver hit them both while they were walking together in a crosswalk. The arbitrator's award, later confirmed by the superior court, determined that Glassman's compensable damages resulting from the accident exceeded the required threshold to entitle her to the umbrella-policy excess UIM limits of $1 million. Before the arbitration

---

[2] UIM coverage provided in an auto-liability insurance policy and proceedings related thereto are addressed by Insurance Code sections 11580.2–11580.5, the Uninsured Motorist Act. They apply to both uninsured and underinsured motorist coverage in that Insurance Code section 11580.2, subdivision (p)(2) "requires auto insurance policies to provide underinsured motorist coverage for motorists whose liability insurance is less than the limits carried on the injured motorist's plan." (*Storm v. Standard Fire Ins. Co.* (2020) 52 Cal.App.5th 636, 643 (*Storm*); *McIsaac v. Foremost Ins. Co. Grand Rapids, Michigan* (2021) 64 Cal.App.5th 418, 420, fn. 1 (*McIsaac*); see also Ins. Code, § 11580.2, subd. (n) ["Underinsured motorist coverage shall be offered with limits equal to the limits of liability for the insured's uninsured motorist limits in the underlying policy, and may be offered with limits in excess of the uninsured motorist coverage"].)

2

hearing and award, Glassman had issued to Safeco a CCP section 998 offer in the amount of $999,999.99, one cent less than the policy limits. Safeco did not accept the offer, on which Glassman prevailed when the arbitrator later ruled she was entitled to the full $1 million umbrella-policy limits.

After Glassman petitioned the trial court to confirm the arbitration award, she also sought prejudgment interest under section 3287, subdivision (a) (§ 3287(a)) from the date of her CCP section 998 offer. This subdivision provides a right to prejudgment interest when a person "is entitled to recover damages certain, or capable of being made certain by calculation" (section 3287(a)), and the right to recover is vested in the person on a particular day. Unlike section 3291, which Glassman initially invoked, it contains no reference to CCP section 998. Thus, under section 3287(a), a liquidated damage claim triggers the entitlement to prejudgment interest not as a cost, as it is treated under section 3291 if a plaintiff prevails on a CCP section 998 offer, but as a form of additional compensatory damages. For a plaintiff to obtain prejudgment interest under section 3287(a), the defendant must have known or have been able to calculate from reasonably available information the amount of the plaintiff's liquidated claim owed as of a particular day. (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 150–151 (*Collins*); *Cassinos v. Union Oil Co.* (1993) 14 Cal.App.4th 1770, 1789 (*Cassinos*).)

The trial court here denied Glassman's request for prejudgment interest under section 3287(a), concluding that the amount of her policy-limits claim for excess UIM benefits was not certain or capable of being made certain and this uncertainty was not fixed by Glassman's CCP section 998 policy-limits offer. On appeal from the ensuing judgment confirming the arbitration award, she challenges only the court's denial of prejudgment interest under section 3287(a). She urges, as she did below, that to promote

3

settlement and fair treatment of an insured by an insurer, an insured's prevailing CCP section 998 offer in a UIM proceeding effectively liquidates the insured's claim in the amount and as of the date of the offer under section 3287(a), mandating an award of prejudgment interest. We reject this contention, concluding that neither section 3287(a) nor CCP section 998, taken separately or together, so provide.

Glassman further contends that her CCP section 998 offer in this case did, in fact, establish both the sum certain and the date certain of her underlying claim to the $1 million policy limits for purposes of awarding her prejudgment interest from the date of her offer under section 3287(a), and that Safeco knew or had reasonable access to sufficient information about her special damages alone at that point to make their recoverable amount from Safeco—the umbrella-policy limits—certain. But, as is clear from the record, when the trial court denied Glassman's request for prejudgment interest under section 3287(a), lacking within the realm of its consideration was evidence of Safeco's knowledge that Glassman's economic losses or special damages resulting from the accident—her hard costs—in fact already exceeded the umbrella-policy limits when her CCP section 998 offer was made, or an evidentiary showing that this information was then reasonably available to Safeco. Finally, we reject as forfeited Glassman's newly articulated and alternative claim to prejudgment interest under section 3287 from the date of the arbitration award.

We accordingly affirm the judgment.

4

STATEMENT OF THE CASE

I.     *The Accident*[3]

"On January 22, 2015, . . . [Glassman] and her mother . . . were leaving a hospital" where [Glassman]'s father was staying after having suffered a heart attack. "[Glassman] and her mother . . . were crossing the street . . . when an SUV . . . failed to yield and struck both of them." "[Glassman] recalls she was hit first and then her mother[,] . . . [who] was dragged and pulled up into the SUV's wheel well, causing her to suffer mortal injuries." After hitting them, "the SUV did not stop so [Glassman] ran after it pounding on the vehicle to get the driver's attention. [Glassman then] went to her mother[,] who was face down on the ground" and bleeding. "Her [mother's] leg was in a very bizarre position[,] which looked unnatural; eventually it was discovered her pelvis was crushed[,] so the leg was not connected to the rest of her body. [Glassman] held her mother's hand and squeezed her mother's fingers while her mother was whimpering. [Glassman] was eventually covered with her mother's blood."

Once medical personnel arrived, Glassman was led away from the scene and she fainted. She "suffered relatively minor physical injury [from] the accident, but her psychological damages were severe. She was transported to the same hospital as her mother, who passed away in the ambulance on the way." After a few hours during which Glassman believed her mother was still being treated, "[she] was told of her mother's fate and hospital personnel asked if [Glassman] would like to see her [mother's body].

---

[3] We derive the underlying facts mostly from the arbitrator's final award dated May 22, 2021. Other facts are derived solely from the papers that were actually before the trial court when and as it considered and denied Glassman's request for prejudgment interest.

5

When [Glassman] indicated she would, she was brought into a room where her dead mother was shrouded in a blanket up to her neck" but with injuries to her head and neck still visible. Glassman stayed in the room for a few hours until she was convinced to leave. The next day, "[Glassman] was charged with the responsibility to inform her father that his wife of 62 years was killed in an accident" and she "coordinated the final arrangements for her mother."

## II.     *Glassman's Injuries*

After the accident, and "[v]irtually every day since," as the arbitrator found, Glassman, who [had been] diagnosed with PTSD from the incident, "suffered from flashbacks, i.e., sudden, uncontrollable[,] and vivid memories of the accident. These flashbacks are triggered by reminders, including Ford SUV vehicles, crosswalks and intersections, sirens, traffic, being a passenger in a car, reading about or seeing car crashes in movies or videos, seeing pictures of her mother, and other such objects and events. Over time, these flashbacks have become somewhat less frequent[,] but they still occur almost every day and they remain extremely disturbing. At night, [Glassman] often suffers from nightmares related to her mother's death. [She] is hyper-vigilant and experiences overwhelming anxiety. [She] also suffers from pre-existing depression, which has been exacerbated since her mother was killed."

As the arbitrator further found, "[w]hile the accident is probably the most devastating [experience Glassman] has suffered, she unfortunately has a complex physical and psychological history." In her records and in testimony presented to the arbitrator, there was pre-accident evidence of family strife and related issues; multiple medical problems, procedures, and surgeries; three prior auto accidents causing injuries; and other traumatic experiences. Even before the accident, Glassman had suffered from chronic

6

pain, cognitive issues, sleeping problems, and mental-health conditions, including a prior PTSD diagnosis. She had been treated by numerous medical professionals with varied specialties for many things and had had periods of being away from work due to medical or mental-health issues, including on the day when the accident involving her mother happened.

But after the accident and her mother's death, according to one of her doctors, "[Glassman] was inconsolable," "disoriented," and "in the worst shape of her life." She sought psychiatric treatment and was hospitalized. She was suffering from "post-traumatic stress, suicidal ideations, depression, and hourly flashbacks about the accident" and "significant grief and ongoing chronic PTSD symptoms." She was also experiencing "side effects from all of the medicines she [was] taking, including opioids for constant pain management. She tried to self-manage the medications[,] often with unfavorable results." Family strife and related issues continued, along with new and acrimonious marital problems ultimately leading to her divorce.

In the wake of the accident, she also experienced other stressors and trauma, including her companion dog having to be euthanized, witnessing a fatal police shooting, and seeing another person being hit by a truck. Still, according to the arbitrator, one of her doctors described her PTSD as "directly relating to her [having witnessed] her mother's death"—a view echoed consistently in the evidence presented to the arbitrator from her other doctors—and as "one of the most resistant to treatment" that that doctor had ever seen. Another of Glassman's doctors likewise opined that "while [her] life has had ups and downs with various stressors, the sole cause of her [post-accident] PTSD was witnessing the horrific death of her mother and not from the other stressors in her life, past or present." Yet another of her doctors offered that "[Glassman] had the worst case [of PTSD] he had ever seen . . .

7

and that this was the direct result of seeing her mother's death and was not due to other stressors in [her] life."

Even the neuropsychologist and PTSD expert retained by Safeco to "assess Ms. Glassman's emotional condition in relation to the accident and loss of her mother," and who had conducted an independent medical examination (IME) in early 2020, a year before the arbitration hearing, opined in her written report[4] that Glassman's " 'PTSD is directly related to the motor vehicle accident in which her mother perished and the pre-existing depressive disorder has been exacerbated by her inability to manage the PTSD symptoms. . . . In all probability, Ms. Glassman will need to continue the treatment, including medication, for the foreseeable future to help her maintain the limited lifestyle that she has presently.' " This Safeco-retained doctor was later called by both sides to testify at the arbitration hearing.

III.    *The Arbitration and the Final Award*

As noted, the applicable Safeco umbrella policy provided $1 million in excess UIM benefits. It incorporated or referenced various terms of Glassman's corresponding Safeco auto policy, including its UIM coverage and arbitration provisions.[5] The auto policy's UIM coverage mirrored the scope of coverage required by Insurance Code section 11580.2, under which Safeco

---

[4] The report itself is not part of the properly delineated record.

[5] Insurance Code section 11580.2, addressing UIM coverage requirements, excludes from its application auto-liability coverage "provided only on an excess or umbrella basis." (Ins. Code, § 11580.2, subd. (a)(1).) But the Safeco umbrella policy at issue expressly incorporated the relevant UIM provisions of Glassman's related Safeco auto policy, which, from the portions that are in the record, reflected the requirements of Insurance Code section 11580.2.

8

agreed to pay, as relevant here, "damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of . . . [b]odily injury sustained by that insured and caused by an accident." The umbrella policy, based on certain express limits, conditions, and exclusions, committed Safeco to pay excess UIM benefits in the form of "damages resulting from bodily injury which are in excess" of the required minimum limits provided under her underlying auto policy, plus the limit of "any other insurance collectible by the Insured which an Insured is legally entitled to recover from the owner or operator of an uninsured/underinsured motor vehicle," and "in accordance with the terms and conditions" of the underlying auto policy at the time of the loss.

For her damages from the accident, Glassman received $255,000 under her Safeco auto policy, which included $5,000 in medical-expense reimbursement. And she received another $250,000 from the underinsured driver's auto policy. After making a claim under the umbrella policy for excess UIM benefits and Safeco having denied it, Glassman initiated arbitration proceedings under the policy's arbitration agreement, incorporated from the underlying auto policy. Under that provision, if the parties "[did] not agree . . . [w]hether th[e] insured is legally entitled to recover damages; or . . . [a]s to the amount of damages which are recoverable by th[e] insured[] from the owner or operator of an uninsured motor vehicle then the matter will be settled by arbitration." Further, "[a]ny decision of the arbitrator will be binding as to . . . [w]hether the Insured is legally entitled to recover damages; and . . . [t]he amount of damages."

The parties engaged in pre-hearing discovery, including Glassman's submission to the IME conducted by Safeco's retained neuropsychologist and PTSD expert, whose written report dated January 9, 2020 (not in the record),

9

was favorable to Glassman both in terms of the extent of her injuries and their cause from having witnessed the accident that killed her mother. On February 12, 2020, Glassman issued her CCP section 998 offer to Safeco for $999,999.99, one cent less than the umbrella-policy limits. Safeco did not accept the offer. The arbitration hearing, complete with witness testimony, occurred nearly a year later, on January 26 and 27, 2021.

Glassman contended in the arbitration hearing that she was entitled to an award of $4 million, representing the "cost of all her medical care, her wage loss, the cost of her future medical care, and damages for past and future emotional distress." She requested an award of this amount representing her compensatory damages against the underinsured driver even though the limits of the Safeco umbrella policy at issue were $1 million, citing Insurance Code section 11580.2, subdivision (f), which requires the UIM arbitrator to determine only (1) whether the insured is entitled to recover against the uninsured motorist and (2) if so, the amount of the damages. As noted, by the time of the arbitration, Glassman had already settled with the underinsured driver's insurer for $250,000, and she had received $250,000 in UIM coverage available through her own Safeco auto policy, plus $5,000 for her medical expenses. Under the terms of the umbrella policy, to recover the $1 million policy limits, Glassman's recoverable damages against the underinsured driver had to reach or exceed $1,505,000, composed of the limits plus the $505,000 she had already received.

Safeco, for its part, contended in the arbitration hearing that Glassman had already been adequately compensated for her damages proximately resulting from the accident by her prior receipt of the $505,000, and therefore no excess UIM benefits under the umbrella policy were awardable. It argued that while Glassman's bystander-distress damages caused by her having

10

contemporaneously witnessed the SUV hit and injure her mother were recoverable, her additional damages sustained from witnessing the immediate aftermath of the impact as her mother was caught in the wheel well of the SUV and then dropped to the street, from comforting her ailing and injured mother in the street, from later learning of her mother's death, and then from seeing her mother's dead body in the hospital, along with her subsequent grief and emotional distress, were not. Its argument rested on its asserted legal theory that Glassman's emotional and psychological distress from the entire experience could be parsed into separate and distinct "slice[s] in time," with only damages from her contemporaneous observation of the immediate impact to her mother as recoverable. But Safeco also disputed causation, arguing that Glassman's emotionally distressed condition after the accident could not solely be attributed to it and was instead or also caused by the many other documented traumas and medical issues in her life, both before and after the accident.[6]

In her final award dated May 22, 2021,[7] the arbitrator largely rejected Safeco's attempts to limit Glassman's recoverable damages resulting from the

---

[6] Safeco also raises issues about the proper measure of Glassman's medical costs as damages in view of *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 555–556 (*Howell*), which arguably would have limited the amount of her compensable damages for medical expenses to the "lesser of (a) the amount paid or incurred for medical services, and (b) the reasonable value of the services." (*Id.* at p. 556.) Safeco contends that because of *Howell*, its possession of Glassman's medical bills alone (part of Glassman's motion to augment, discussed *post*) would not have yielded certainty of her special damages. The arbitrator did not specifically address this *Howell* issue in her final award, except to note that many of Glassman's medical expenses were covered by insurance.

[7] The arbitrator's final award was preceded by an interim award in Glassman's favor dated April 12, 2021, which was silent as to costs. Glassman then requested an award of costs from the arbitrator.

accident, whether on the legal basis of its "slice in time" argument capping her damages at those caused only by her contemporaneous observation of her mother's injuries or its factual claim that the full extent of her injuries, and hence her damages, was caused not by the accident but other traumatic events in her life, whether before or after. But the arbitrator nonetheless did not include in the calculation of Glassman's damages to meet the threshold for her recovery of the umbrella-policy limits "any damages [incurred] as a result of [Glassman's] observations after she fainted at the scene. Observations of her mother in the hospital were not considered in determining damages."

The arbitrator ultimately concluded in the final award that Glassman's compensable (but unquantified) "monetary expenses" were still "well over $1 million, a large part of which [we]re medical expenses covered by insurance." Her lost wages for the 21-month period after the accident and until her later return to work were found by the arbitrator to have totaled $179,000. And the present value of her "future psychotherapy treatment will be about $195,129." Thus, according to the arbitrator, after roughly totaling Glassman's special damages alone at somewhere "well over" $1,374,129, the total of her proven and recoverable "economic and emotional distress" damages resulting from the accident exceeded $1,505,000.

As noted, this was the threshold amount for Glassman to receive an award of $1 million—the umbrella-policy limits—after factoring in the $250,000 she had already received from the underinsured driver plus the $255,000 from her own Safeco auto policy.

The arbitrator accordingly determined that because Glassman's proven and compensable damages met the $1,505,000 floor, she was entitled to the full $1 million policy limits. The arbitrator declined to determine the exact

amount of Glassman's damages recoverable against the UIM driver, as Glassman had requested. For this, the arbitrator cited *Cothron v. Interinsurance Exchange* (1980) 103 Cal.App.3d 853, 858–859 (*Cothron*), and the principle that no more than the policy limits can be awarded in a UIM arbitration in any event (*id.* at p. 860). (See also *State Farm Mut. Auto Ins. Co. v. Superior Court* (2004) 123 Cal.App.4th 1424, 1431 (*State Farm*).)

The arbitrator ultimately did not award costs as also requested by Glassman, including those made recoverable by her prevailing CCP section 998 offer, determining that this decision was beyond the scope of the arbitral authority, set by contract in the form of the umbrella policy of insurance. The arbitrator thus denied Glassman's costs request without prejudice to the superior court deciding this issue in connection with a petition to confirm the final award. (See *Storm, supra,* v. 52 Cal.App.5th at pp. 646–648 [where UIM policy defines scope of arbitration agreement in parallel with Ins. Code, § 11580.2, it is for court, not arbitrator to award costs incurred during arbitration proceedings].)

IV.     *Proceedings in the Superior Court*

After the arbitrator issued her final award in Glassman's favor, on June 7, 2021, Glassman filed a petition in the superior court to confirm it under Code of Civil Procedure section 1285, along with her declaration and a notice of hearing, which the clerk set for August 31, 2021.[8] The petition's prayer sought entry of judgment in conformity with the award and "costs as a matter of right pursuant to [Code of Civil Procedure] Sections 1032(b),

_____

[8] Safeco had previously filed its own separate petition to confirm the interim arbitration award (Santa Clara Superior Court case no. 21CV382874). That proceeding is not relevant to the issues on appeal.

1293.2, 3291, and 998."[9] The prayer also sought "recoverable costs and interest" and "such other and further relief as the Court may deem proper." Section 3291, as noted, provides for prejudgment interest as a recoverable cost when a plaintiff prevails on a CCP section 998 offer in personal-injury actions. Glassman's petition did not expressly seek prejudgment interest under section 3287, and her supporting two-page declaration filed with the petition contained no facts addressing this issue, meaning facts supportive of the conclusion that Glassman's damages were certain or capable of being made certain as of a particular day.

Safeco initially filed a demurrer to Glassman's petition and a motion to strike the portions of it that included the word "interest" and allegations claiming a right to prejudgment interest under section 3291, relying on *Pilimai*. Safeco requested that these motions challenging the pleading be heard concurrently with Glassman's petition. But these motions were ultimately set by the clerk to be heard on October 26, 2021, some two months after the scheduled hearing on Glassman's petition to confirm the award. In the required meet-and-confer process leading up to those motion filings, on July 7, 2021, Glassman conveyed to Safeco that she was no longer pursuing prejudgment interest under section 3291—recognizing *Pilimai*'s holding—but instead under section 3287.[10] And her points and authorities in opposition to

---

[9] The citation to section 3291 was apparently intended to be to the Civil Code, not the Code of Civil Procedure.

[10] Subdivision (b) of section 3287 applies to unliquidated claims and it is discretionary. (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 375–376 (*Espejo*) [court in its discretion may award prejudgment interest under section 3287, subd. (b) for equitable and unliquidated claims such as restitution to make injured party whole].) Although Glassman alternatively sought prejudgment interest under this subdivision in the trial court, she appears to have abandoned this claim on appeal.

14

Safeco's demurrer and motion to strike, set for hearing in October, made this claim.

On August 16, 2021, Glassman filed an amended declaration in support of her petition to confirm the arbitration award, still set for hearing on August 31st. The amended declaration briefly included the new fact of her February 12, 2020 CCP section 998 offer.

Attached to the amended declaration was a memorandum of points and authorities in support of her petition, which Glassman had previously omitted with her papers, and which was untimely for a hearing noticed for August 31st. (Code Civ. Proc., § 1005.) There, Glassman for the first time expressly argued she was entitled to an award of prejudgment interest under section 3287(a). She argued that a prevailing CCP section 998 offer made by an insured in the context of a UIM proceeding liquidates the claim under section 3287(a) when the offer expires without acceptance, to mandate an award of prejudgment interest as of that date. She also argued that when Safeco's retained expert who had conducted the IME issued the written report favorable to Glassman in January 2020, her "economic damages, including medical expenses, exceeded [the umbrella-]policy limits." She offered no evidence to support this stated fact, including the report, or to support that Safeco knew this fact, or had reasonable access to information from which it should have known it.

In addition to its demurrer and motion to strike, on August 18, 2021, Safeco filed opposition to Glassman's petition, in which it requested a continuance of the August 31st hearing date, given the later date set for its motions challenging Glassman's pleading. Safeco also objected to and moved to strike her belatedly filed memorandum of points and authorities in support of her petition. And Safeco specifically opposed Glassman's request for

15

prejudgment interest under section 3287, contending that her petition had not made or preserved this claim.[11]

On August 23, 2021, Safeco filed a supplemental brief in opposition to Glassman's newly asserted right to prejudgment interest specifically under section 3287. This brief reached the merits of Glassman's request, and argued that prejudgment interest was not available under section 3287 in a UIM proceeding as a matter of law, no "damages" as contemplated in section 3287(a) being awardable. Safeco further urged that Glassman's damages, especially her general damages for emotional distress, were not in any event certain or capable of being made certain before the final arbitration award and that Glassman's CCP section 998 offer did not change or affect the prior state of uncertainty.

Glassman's reply in support of her petition to confirm the arbitration award, filed on August 25, 2021, offered her supplemental declaration. There, she pointed out that she had previously asserted to Safeco in July 2021 her right to prejudgment interest under section 3287 and had also filed her brief in opposition to Safeco's motion to strike raising "detailed arguments" on this issue. She further averred that she "would have filed a separate motion for prejudgment interest under . . . section 3287" had "Safeco not filed its motion to strike [the] request for interest" from her petition to confirm the arbitration award. She also attached her opposition to Safeco's motion to

---

[11] Safeco wisely abandons this waiver/forfeiture claim on appeal. "A general prayer in the complaint is adequate to support an award of prejudgment interest. 'No specific request for interest need be included in the complaint; a prayer seeking "such other and further relief as may be proper" is sufficient for the court to invoke its power to award prejudgment interest.' " (*North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, 829 (*North Oakland*).)

16

strike, which she apparently thought would be heard concurrently with her petition on August 31st.

Glassman's reply points and authorities in support of her petition maintained her legal argument that her CCP section 998 offer had effectively liquidated her claim for purposes of applying section 3287(a) and that her having prevailed on her offer, without more, entitled her to prejudgment interest under section 3287(a) as a matter of law as of March 13, 2020, when the offer expired. She argued in a footnote, with no supporting evidence, that her damages were in fact ascertainable in January 2020, "when Safeco's own expert . . . rendered her report based on the [IME] of [Glassman], and all the discovery [Glassman] produced in response to Safeco's demands. . . . At this point in time, [Glassman's] economic damages, including medical expenses, exceeded policy limits ($1,000,000). Thus, in the alternative, [Glassman's] damages were a sum certain on January 18, 2020[,] for purposes of . . . section 3287. The evidence was not disputed."

At the hearing on Glassman's petition on August 31, 2021, the court continued the matter to September 21, 2021, and ordered no further briefing. The court apparently had not received Safeco's supplemental opposition, which addressed Glassman's claim for prejudgment interest under section 3287(a) and which had been previously filed or submitted to the clerk for filing, and ordered Safeco to refile that brief, which it did that day.

Before the continued hearing date, the court issued a tentative ruling confirming the arbitrator's final award in Glassman's favor but denying prejudgment interest under section 3287. Glassman challenged this tentative denial and argued at the hearing that CCP section 998 "is not just a cost-shifting statute; it also acts independently to liquidate the claim, just as it does for purposes of personal injury claims under [s]ection 3291." She further

17

argued that "[s]ince *Pilimai* precludes prejudgment interest under [s]ection 3291 in [UIM] proceedings because such a proceeding is an action based on contract, then [s]ection 3287, along with [CCP s]ection 998, is a natural and appropriate mechanism to put Safeco on equal footing with other litigants."

At the hearing, Glassman also corrected the date from which she sought mandatory prejudgment interest under section 3287(a), advancing that date to February 12, 2020, the date of her CCP section 998 offer, from the March 2020 date by which Safeco had not timely accepted it. She further clarified that prejudgment interest could stop accruing as of September 13, 2021, when she unconditionally received from Safeco its tender of the full $1 million umbrella-policy limits, for a total of 580 days.

At the end of the hearing, the court orally announced it was adopting its tentative ruling granting Glassman's petition but denying prejudgment interest, which it did in a written order filed that day. The court reasoned that section 3287(a) did not apply here, concluding that Glassman's "damages at issue in the arbitration proceeding . . . were not certain or capable of being made certain as there was a significant general damage claim that was disputed by the parties. While the Court understands the cost-shifting purposes of CCP 998, the fact that [Glassman] prevailed above her 998 offer at arbitration does not equate to recovery of prejudgment interest pursuant to [s]ection 3287(a)." In its order, the court also vacated as moot the later hearings set for Safeco's demurrer to Glassman's petition and motion to strike allegations concerning prejudgment interest.

The parties later litigated the issue of costs, some which had shifted on account of Glassman's CCP section 998 offer, resulting in a $67,046.20 award in Glassman's favor. On January 14, 2022, the court entered a written order

18

and judgment, confirming the final arbitration award and making its ruling and award as to costs.

Glassman timely appealed, limiting her appeal "to the portion of the [j]udgment denying [her] request for prejudgment interest."

DISCUSSION

I.     *The Scope of the Appellate Record*

The day after Glassman filed her notice of appeal, and before she designated the appellate record under rule 8.122 of the California Rules of Court,[12] Safeco timely filed its Respondent's Notice Electing to Use an Appendix under rule 8.124(a)(1)(B). Glassman later filed her own designation of the record, electing a clerk's transcript and listing the documents she wished to be included, as provided in rule 8.122(a)(1).

The superior court clerk then erroneously proceeded to prepare a clerk's transcript for this appeal despite Safeco having timely elected to use an appendix, which should have controlled the record under rule 8.124(a)(1)(B). This rule provides in relevant part that "[u]nless the superior court orders otherwise on a motion served and filed within 10 days after the notice of election is served, this rule governs if: . . . (B) [t]he respondent serves and files a notice in the superior court electing to use an appendix under this rule within 10 days after the notice of appeal is filed and no waiver of the fee for a clerk's transcript is granted to the appellant." Safeco complied with this rule, the superior court did not rule otherwise, and there was no fee waiver. Because Safeco proceeded this way, it attempted to file its appendix with its respondent's brief. But the clerk of this court would not

---

[12] Further undesignated citations to rules are to the California Rules of Court.

19

accept it, a clerk's transcript from the superior court already having been filed.

Safeco then filed a motion to augment the record in this court under rule 8.155(a), seeking to add to the record what it had sought to include in its appendix. This consisted of the following three documents: 1) full Acknowledgment of Satisfaction of Judgment executed by Glassman on February 11, 2022; 2) Respondent's Notice Electing to Use an Appendix filed in the superior court on February 15, 2022; and 3) the Superior Court docket sheet listing filings in the case in that court. The ruling on this motion to augment the record was deferred by order dated August 24, 2022, for consideration with the merits of the appeal. Over Glassman's opposition, we grant Safeco's motion to augment the record to include these three documents, attached to the motion, as Safeco timely filed its election to proceed by appendix, and under rule 8.124(a)(1)(B), that should have controlled, and the appeal should have proceeded by appendix instead of with a clerk's transcript as later designated by Glassman.

Glassman also filed a motion to augment the record, which this court by order of June 24, 2022, deemed a request for judicial notice and likewise deferred for consideration with the appeal. The materials that are the subject of this motion consist of Glassman's opposition to Safeco's motion to tax costs in the trial court and her supporting declaration, both filed on December 21, 2021, three months after the trial court had already ruled on Glassman's request for prejudgment interest.[13] Thus, these documents were not before or considered by the trial court when it made the ruling that is the subject of the

---

[13] The documents include some of Glassman's earlier discovery responses and portions of the written summary report from the January 2020 IME of Glassman conducted by Safeco's retained expert.

appeal and were not taken into account for the point now urged—that Glassman's damages were certain or capable of being made certain as of the date of her CCP section 998 offer in February 2020. In support of the motion, Glassman avers that when she "designated the record in this case, [she] did not anticipate that the pleadings concerning" Safeco's later motion to tax costs "were relevant to the issue of prejudgment interest." She urges that the materials contain "information supporting [her] appeal on the issue of prejudgment interest as they show the information Safeco had in its possession at the time [it was] served with" her CCP section 998 offer.

Safeco opposes the motion to add these materials to the appellate record or have them considered on review on the ground they were not before the trial court when it made the ruling now on appeal, and it seeks judicial notice of five facts in support of its opposition, the ruling on which was also deferred for consideration with the appeal.[14]

We take judicial notice of the five facts for the limited purpose of ruling on Glassman's motion to augment, deemed one for judicial notice, and we deny the motion. Elemental to appellate practice and procedure is that a reviewing court will ordinarily not consider on appeal matters that were not presented to the trial court when it made the challenged ruling, including matters of which an appellate court may take judicial notice under Evidence Code section 459. (*Vons Cos., Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th

---

[14] The facts, which seem undisputed, in essence are: 1) the only issue on appeal is the denial of prejudgment interest; 2) the trial court made this ruling on September 21, 2021; 3) Glassman never sought reconsideration of the ruling in the trial court; 4) she filed in the trial court the documents she now seeks to include in the appellate record on December 21, 2021, in connection with Safeco's motion to strike or tax her claimed costs; and 5) the documents were not before the court when it ruled on Glassman's request for prejudgment interest.

434, 444, fn. 3; [appellate court will not generally take judicial notice of matters that were not before the trial court absent exceptional circumstances]; *Brosterhous v. State Bar of California* (1995) 12 Cal.4th 315, 325 [appellate courts may properly decline to take judicial notice of a matter that should have been but was not first presented to trial court for consideration in the first instance]; *DeYoung v. Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 863 [appellate courts should not generally judicially notice document that although on file in trial court was not presented to and considered by that court in first instance].)

" 'It has long been the general rule and understanding that "an appeal reviews the correctness of [an order] as of the time of its rendition, upon a record of matters which were before the trial court for its consideration" ' [Citation.]" (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1239.) Documents not presented in the trial proceeding generally cannot be included as part of the record on appeal and must be disregarded on appeal as beyond the scope of review. (*Doers v. Golden Gate Bridge, Highway & Trans. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 (*Doers*); *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 450, fn. 5; *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 631–632 (*Pulver*).) Further, even if a reviewing court takes judicial notice of documents, it is not for the truth of matters asserted therein (*Guarantee Forklift, Inc. v. Capacity of Texas, Inc.* (2017) 11 Cal.App.5th 1066, 1075), and here, Glassman's motion extends to the truth of facts bearing on Safeco's knowledge of her damages, or possession of information from which this knowledge could have been derived, when she made her CCP section 998 offer.

Glassman urges that because these additional matters she seeks to include within the record on appeal include documents or facts that predate

the trial court's challenged decision, the facts and documents are not actually new and should be within the scope of our review. But these matters were still not before the trial court as it ruled on prejudgment interest. It would undermine basic principles of appellate review to include within the scope of our review matters that a party perhaps should have, but did not, offer to the trial court in the first instance in making the ruling now challenged on appeal.

That Glassman placed these documents and facts before the trial court in the same case but for a different and later motion (in opposition to Safeco's motion to tax costs) does not alter this conclusion. Nor does the fact that the arbitrator referred to or discussed in the final award, which is in the record, some of the matters now sought to be included within the scope of review. The arbitrator's final award took into account and discussed not just documents and medical records that had apparently been exchanged in discovery and later were admitted into evidence at the hearing but also testimony of witnesses in the two-day evidentiary hearing that took place a year after Glassman's CCP section 998 offer. And the decision does not necessarily identify or separate the particular evidentiary sources that led to the arbitrator's specific findings and conclusions on Glassman's damages, at least not in a way that would affect our analysis of the proper scope of the record in this appeal.

Finally, it is not the case, as Glassman contends, that the purpose of the proposed additions to the record "is to show the amount involved." It is more importantly for her to argue the certainty of the amounts of her special damages as of the date of her CCP section 998 offer and the degree of Safeco's knowledge or awareness of those amounts and that certainty at the time. This is a far different and more expansive factual issue and one Safeco did

not have the opportunity to rebut below with its own evidence, and it involves evidence that the trial court was not presented with when it ruled on prejudgment interest.

Glassman also separately moves this court to take evidence on appeal and for an independent factual finding, both under Code of Civil Procedure section 909 and rule 8.252(b) and (c). The evidence she seeks to add to the record in this way is a letter dated March 12, 2020, from Safeco's counsel to hers in which Safeco affirmatively rejected her CCP section 998 offer and statements included within the letter that go to Safeco's then-existing state of knowledge of the extent of her special damages. The independent factual finding she seeks us to make from the letter is that Safeco "possessed sufficient information to calculate [Glassman]'s damages up to the $1 million policy limit at the time of" her CCP section 998 offer in February 2020—the evidentiary gap directly bearing on Glassman's claimed right to prejudgment interest under section 3287(a) that she failed to fill in the trial court.

Glassman asserts that the letter is "newly discovered evidence" and was not presented to the trial court because she only became aware of it just before filing her motion in this court on September 6, 2022, after Safeco had filed its respondent's brief. Although the letter was contained within her former attorney's files, she avers she was medically advised at the time the letter was sent (as distinct from almost two years later when the trial court considered and ruled on prejudgment interest) to allow her attorney to handle and respond to matters concerning the then-pending arbitration. She further asserts that the letter constitutes evidence so conclusive that it compels the direction of a judgment in her favor, that its effect on the appeal is decisive, that it would enable this court to make a final determination of

24

the issues without further proceedings in the trial court, and that exceptional circumstances warrant granting her motion, which Safeco opposes.

Under Code of Civil Procedure section 909, "an appellate court may exercise its discretion to consider evidence that was not before the trial court in ' "exceptional circumstances." ' (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, italics omitted [(*Zeth*)].) Moreover, this authority may be exercised only . . . [when] the evidence arose after judgment or was unavailable to the movant before judgment [citation]; and [the] evidence supports the affirmance of the court's judgment [citation]." (*Lewis v. YouTube LLC* (2015) 244 Cal.App.4th 118, 123.) The power to receive new evidence and make factual findings " 'should be exercised sparingly.' " (*Zeth*, at p. 405; *MMM Holdings, Inc. v. Reich* (2018) 21 Cal.App.5th 167, 187; *Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1213; *Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 605 (*Bombardier*) [discretionary power to make findings on review rarely exercised and only sparingly and in exceptional circumstances, absent which no findings should be made]; *Tupman v. Haberkern* (1929) 208 Cal. 256, 269 (*Tupman*) [even in exceptional circumstances, power to make findings should be exercised only when doing so will terminate the litigation, either by affirming judgment or reversing with directions to enter judgment for appellant when it is clear losing party could not make a substantial showing in its favor on remand].)

As a basic principle of appellate review, appellate courts will not use Code of Civil Procedure section 909 to resolve conflicts in the evidence or to substitute their own factual determinations for those of the trial court, especially for the purpose of outright reversal or remand for a new trial or hearing, as doing so "would effectively usurp the power of the trial court as

25

an arbitrator of the facts." (*Tupman, supra,* 208 Cal. at p. 269; see also *Philippine Export & Foreign Loan Guaranty Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1090 [power of reviewing court to take evidence is never used where there is conflicting evidence in the record and substantial evidence supports trial court's findings].)

In sum, we do not find this case to present exceptional circumstances to warrant the exercise of our discretion to either accept new evidence or make independent findings on appeal under Code of Civil Procedure section 909, especially to reverse the order under review. We do not perceive that granting the motion would end the litigation; rather, accepting the requested new evidence would instead allow the case to proceed based on facts never placed before the trial court in connection with the issue on review. Safeco did not have an opportunity to oppose the new evidence in the trial court; nor did it have the chance to address it in its respondent's brief on appeal. And it would be entitled to do so. We accordingly decline to "overrule the trial court's fact-finding responsibility and authority and reinstate litigation where it was a party who failed to bring the facts to the trial court's attention in the first instance." (*Bombardier, supra,* 216 Cal.App.4th at p. 605.)

As a corollary of our denial of Glassman's motions concerning the appellate record, we also observe that a party's brief cannot make arguments that rely on facts either outside the record or improperly included within it; statements in the briefs based on such matter are disregarded by an appellate court. (*Kendall v. Allied Investigations, Inc.* (1988) 197 Cal.App.3d 619, 625; *Pulver, supra,* 182 Cal.App.3d at pp. 631–632.) Glassman's briefs, and also Safeco's brief in response, cite to matters we decline to include within the scope of our review, and we will disregard statements and arguments in the briefs that rely on this improper matter for record support.

26

II.    *The Relevant Statutory Landscape*

Before reaching Glassman's legal arguments, we first lay out the relevant statutory context of her claims.

### A. Insurance Code section 11580.2

As noted, Insurance Code section 11580.2 is part of the Uninsured Motorist Act and sets the parameters of a UIM proceeding. "This law was conceived as a 'temporary solution to the problem of the uninsured' owner or operator of an automobile, who, in spite of the financial responsibility law [Veh. Code, § 16000, et seq.], proved to be 'financially irresponsible' [citation]. It has turned out to be a permanent solution—or, at least, a permanent *partial* solution—to this problem. [¶] At its core, in Insurance Code section 11580.2, the law states that, generally, an automobile liability insurance policy that an insurer issues or delivers to an insured owner or operator covering damages that a third party shall be legally entitled to recover for bodily injury from the insured owner or operator[,] shall also cover damages that the insured owner or operator shall be legally entitled to recover for bodily injury from an *un*insured owner or operator. (*Id.*, subd. (a)(1).) In this aspect, its purpose is to require a 'type of self-protection' on the part of insured owners or operators. [Citations.]" (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 341 (*Mercury*); see also *Pilimai, supra*, 39 Cal.4th at p. 140; *Cal. State Automobile Assn. Inter-Insurance Bureau v. Carter* (1985) 164 Cal.App.3d 257, 260 (*Cal. State*) [purpose of UIM law is to minimize losses to drivers involved through no fault of their own with financially irresponsible and uninsured adverse drivers].)

In requiring arbitration of specified disputes—whether the insured is legally entitled to recover damages, and, if so, the amount—the law's purpose is also "to offer a means of resolving disputes that is more expeditious and

less expensive than litigation. [Citations.] Its beneficiaries include the insurer and the insured, who are each thereby given a right against litigating these issues. [Citation.] But they also include the courts themselves, which are thereby freed from entertaining such litigation. [Citation.]" (*Mercury, supra*, 19 Cal.4th at p. 342; *Pilimai, supra*, 39 Cal.4th at p. 140.)

Thus, by statute, "[c]overage disputes for underinsured motorists are subject to contractual arbitration. (Ins. Code, § 11580.2, subd. (f).) Absent language in the insurance agreement expanding the issues to be arbitrated [citation], underinsured motorist arbitrations contemplate only two issues— 'whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof' ([*ibid*.]). In this context, the term 'damages' refers to the amount of damages the insured is entitled to recover from the underinsured motorist; ' "it does not include determination of the extent of coverage and the amount of money the insurance company is obligated to pay the insured." ' [Citations.]"[15] (*Storm, supra*, 52 Cal.App.5th at p. 643.) But, as occurred here, when the arbitrator's determination is that the damages suffered by the insured, so defined, exceed the policy limits available, it is sufficient for the arbitrator to make that determination without finding the actual total damages that would be owed from the UIM driver to the insured. (*Cothron, supra*, 103 Cal.App.3d at p. 862; see also *State Farm, supra,* 123 Cal.App.4th at pp. 1429–1432 [where insurer paid policy limits before UIM

___

[15] Issues of bad-faith breach of the insurance contract are beyond the scope of the UIM arbitration. (*McIsaac, supra*, 64 Cal.App.5th at pp. 422–423; *Corral v. State Farm Mutual Automobile Ins. Co.* (1979) 92 Cal.App.3d 1004, 1011 [plaintiff's bad-faith cause of action not based on facts surrounding auto accident nor policy provisions at issue in UIM arbitration].) And, relatedly, punitive damages, which have a purpose distinct from UIM proceedings, are not available in such proceedings. (*Cal. State, supra*, 164 Cal.App.3d at pp. 260–264.)

arbitration was initiated, there is no controversy left to be arbitrated].) The UIM arbitration award, in any event, may not exceed the policy limits. (*Cothron,* at p. 860; *State Farm*, at p. 1428, fn. 2.)

As noted, the parties here contracted in the applicable insurance policies to arbitrate just the two issues as set out in Insurance Code section 11580.2, subdivision (f)—the liability of the UIM driver to Glassman and the amount of damages she would be entitled to from that party, up to the umbrella-policy limits. The scope of their agreement thus did not extend to the issue of arbitration costs or prejudgment interest, leaving both these issues for resolution, if any, by the superior court.

Because UIM arbitration is contractual in nature, the parties by contract—the applicable policy of insurance—may agree as to the division of arbitration costs. This allowance is consistent with Code of Civil Procedure section 1284.2, which is part of the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and which provides that absent such agreement, each party to an arbitration, including a UIM arbitration, will pay its pro rata share of the arbitrator's fees and expenses and will bear its own other costs related to the arbitration proceeding. (*Storm, supra*, 52 Cal.App.5th at p. 644; accord, *Austin v. Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812, 1815 (*Austin*) [Code Civ. Proc., § 1284.2 "sets forth the legislative policy of this state that arbitration costs are to be borne by the party incurring them, unless the arbitration agreement provides otherwise"].)

But this does not mean the cost-shifting provisions of CCP section 998, discussed below, are inapplicable for recovery of costs incurred during the UIM arbitration. In fact, as with other kinds of arbitrations, they are.[16]

_____

[16] Costs incurred during an arbitration are distinguished from those incurred in a later judicial proceeding under the California Arbitration Act

(*Pilimai, supra*, 39 Cal.4th at pp. 142, 149–150 [UIM arbitration under Ins. Code, § 11580.2 is an arbitration within the meaning of CCP section 998 and subject to its cost-shifting provisions]; *Storm, supra*, 52 Cal.App.5th at pp. 644–646.) The term "costs" in this sense is distinguished from prejudgment interest under section 3287, which is not a cost but is instead an element of compensatory damages. (*Bodell Construction Co. v. Trustees of California State University* (1998) 62 Cal.App.4th 1508, 1525, fn. 14 (*Bodell*).) Nothing in the Uninsured Motorist Act or the California Arbitration Act directly addresses the availability of prejudgment interest in UIM proceedings. And per *Pilimai*, section 3291 (providing for prejudgment interest as a cost to a plaintiff issuing a prevailing CCP section 998 offer in a personal-injury action) does not apply in a UIM proceeding, which is instead in the nature of an action arising in contract based on the policy of insurance. (*Pilimai, supra*, 39 Cal.4th at pp. 137, 140–141, 146 [action against insurance company to recover policy benefits is one for "damages for breach of contract"]; *Mercury, supra*, 19 Cal.4th at p. 342 [though mandated by statute, UIM arbitration is a form of contractual arbitration, the contract being an automobile-liability insurance policy].)

In sum, the Uninsured Motorist Act, and specifically Insurance Code section 11580.2, does not address the availability of prejudgment interest in UIM proceedings, whether expressly allowing or disallowing it. And while the

---

(Code Civ. Proc., § 1280, et seq.) In this regard, Code of Civil Procedure section 1293.2 provides that " '[t]he court shall award costs upon any judicial proceeding under' " the [California Arbitration Act] to confirm, correct, or vacate an arbitration award. (See *Austin, supra*, 16 Cal.App.4th at pp. 1815–1816 ['the Legislature has distinguished between costs incurred in an arbitration proceeding and costs incurred in superior court to enforce an arbitration award'].)" (*Storm, supra*, 52 Cal.App.5th at p. 644.)

cost-shifting provisions of CCP section 998, described below, do apply to UIM proceedings, such proceedings are not subject to section 3291, under which prejudgment interest is treated as a recoverable cost as a consequence of a prevailing CCP section 998 offer in a personal-injury action. (*Pilimai, supra*, 39 Cal.4th at pp. 145–147.)

### B. CCP Section 998

CCP section 998 provides that the costs of suit allowed to a prevailing party under Code of Civil Procedure sections 1031 and 1032 will be withheld or augmented—shifted—as therein specified. At subdivision (b), CCP section 998 provides that not less than 10 days before trial or arbitration, "any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time." As relevant here, subdivision (d) of CCP section 998 provides that "[i]f an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs."

Nothing in CCP section 998 addresses prejudgment interest.

An offering party who prevails on its offer bears the later burden of showing that the offer was "valid" under CCP section 998, meaning compliant with the statute and " 'sufficiently specific to permit the recipient meaningfully to evaluate it and make a reasoned decision whether to accept it, or reject it and bear the risk [one] may have to shoulder [the] opponent's

31

litigation costs and expenses. [Citation.]' " (*MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1050; see *Covert v. FCA USA, LLC* (2022) 73 Cal.App.5th 821, 833 (*Covert*).) Validity is determined as of the date the offer was served. (*Covert*, at p. 832.)

Once the validity of a CCP section 998 offer is established by the offeror, the burden then shifts to the offeree to demonstrate that the offer was unreasonable or not made in good faith. (*Covert, supra,* 73 Cal.App.5th at p. 833.) If the actual judgment is more favorable to the offeror than was the offer, it is prima facie evidence of the offer's reasonableness. (*Id.* at pp. 833–834.) Whether an offer is made in good faith is based on whether, at the time it was made, it carried a reasonable prospect of acceptance by the offeree. (*Id.* at p. 834.) The court inquires: " 'First, was the [CCP section] 998 offer within the "range of reasonably possible results" at trial, considering all of the information the offeror knew or reasonably should have known? [Citation.] Second, did the offeror know that the offeree had sufficient information, based on what the offeree knew or reasonably should have known, to assess whether the "offer [was] a reasonable one," such that the offeree had a "fair opportunity to intelligently evaluate the offer"?' [Citations.]" (*Id.* at p. 834.)

"The purpose of [CCP] section 998 is to " 'encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer. (This is the stick. The carrot is that by awarding costs to the putative settler the statute provides a financial incentive to make reasonable settlement offers.)" ' [Citation.]" (*Pilimai, supra*, 39 Cal.4th at p. 139.)

As noted, CCP section 998 and its cost-shifting provisions apply to UIM arbitrations, and the " 'maximum liability' provision of Insurance Code

section 11580.2, subdivision (p)(4) does not preclude recovery of costs under" CCP section 998, which "added to the arbitration award, exceed the coverage limits." (*Pilimai, supra*, 39 Cal.4th at pp. 137; see *id.* at pp. 144–145.) This is because the obligation to pay costs under CCP section 998 does not arise in a UIM proceeding from the policy of insurance, and is thus not limited by it, but instead from CCP section 998 itself, which imposes an obligation to pay costs "arising out of [a party's] behavior as a litigant." (*Pilimai, supra*, 39 Cal.4th at p. 144; see also *id.* at p. 145.) As CCP section 998 does not address prejudgment interest—not a cost under section 3287(a) but an element of damages—the obligation rooted in CCP section 998 to pay costs that arises out of a party's "behavior as a litigant" (*id.* at p. 144) does not extend to prejudgment interest claimed under section 3287(a).

### C. Section 3287(a)

Section 3287(a) "allows a person to recover prejudgment interest on 'damages certain, or capable of being made certain by calculation[,]' *from the day* such damages are certain or capable of being made certain. '[T]he court has no discretion, but must award prejudgment interest upon request, from the day there exists both a breach and a liquidated claim.' (*North Oakland*[*, supra,* 65 Cal.App.4th at p.] 828.) Prejudgment interest [under section 3287(a)] is an element of damages, not a cost. (*Id.* at p. 830.)" (*Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 34, fn. omitted (*Warren*); *Watson Bowman Acme Corp. v. RGW Construction, Inc.* (2016) 2 Cal.App.5th 279, 293 (*Watson*) [trial court has no discretion under section 3287(a) and must award prejudgment interest from the first day there exists both a breach and a liquidated claim]; *Bodell, supra*, 62 Cal.App.4th at p. 1525 & fn. 14 [prejudgment interest awarded under section 3291 and CCP section 998 is a recoverable cost, whereas interest under section 3287 is a form of

33

compensatory damages].) But it may be claimed on a post-trial motion and need not be submitted to a jury as trier of fact. (*North Oakland, supra*, 65 Cal.App.4th at pp. 830–831.)

" ' " 'Damages are deemed certain or capable of being made certain within the provisions of [section 3287(a)] where there is essentially no dispute between the parties concerning the basis of computation of damages[,] if any are recoverable[,] but whether their dispute centers on the issue of liability giving rise to damage.' [Citation.]" [Citation.] Thus, " ' "[t]he test for recovery of prejudgment interest under [section 3287(a)] is *whether defendant actually know[s] the amount owed or from reasonably available information could the defendant have computed that amount.* [Citation.]" [Citations.] "The statute . . . does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, 'depends upon a judicial determination based on conflicting evidence and it is not ascertainable from truthful data supplied by then claimant to [their] debtor.' [Citations.]" [Citation.] Thus, where the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate. [Citation.]' [Citation.]" [Citations.]' [Citation.]" (*Warren, supra*, 30 Cal.App.5th at p. 44, italics added; see *Olson v. Cory* (1983) 35 Cal.3d 390, 402 [the certainty required of section 3287(a) is absent when the amounts due turn on disputed facts, but not when the dispute is confined to the rules governing liability].)

Further, prejudgment interest under section 3287(a) is not authorized when there is a factual dispute as to the particular day preceding verdict or judgment from which interest on a liquidated sum would accrue. (*Happolt v. Guardian Life Ins. Co. of America* (1949) 90 Cal.App.2d 386, 405 [trial court erred in awarding prejudgment interest from date plaintiff served a claim on

34

defendant carrier under accidental-death policy as there was no evidence showing when insured notified carrier that death was accidental, a condition for payment on the claim]; see *Cox v. McLaughlin* (1881) 76 Cal. 60, 70 [affirming denial of prejudgment interest where plaintiff's services and material furnished by him were uncertain as to amount, character, value, and time of payment, until fixed by verdict or findings of the court].)

"[T]he general rule is that damages are unascertainable if the[ir] amount . . . depends on disputed facts or the available factual information is insufficient to determine the amount; and damages are ascertainable if the only impediment to the determination of the amount is a legal dispute concerning liability or the measure of damages." (*Collins, supra, v.* 205 Cal.App.4th at p. 151.) "A claim that damages [are] $0 is not a dispute which renders the amount of damages uncertain; it is effectively an argument for no liability. A defendant's denial of liability does not make damages uncertain for purposes of" section 3287(a). (*Los Angeles Unified School District v. Torres Construction Co.* (2020) 57 Cal.App.5th 480, 508, fn. omitted.) In insurance cases involving multiple carriers disputing allocation of loss, the pivot point for ascertaining certainty has been described not as a dispute on liability versus one on damages but as one "between *legal issues* and *factual issues*— i.e., a dispute over a factual issue precludes certainty, but a dispute over a legal issue does not." (*State of California v. Continental Ins. Co.* (2017) 15 Cal.App.5th 1017, 1038 (*Continental*); see *id.* at p. 1039, citing *Collins, supra,* 205 Cal.App.4th at p. 152; see also *Benson v. City of Los Angeles* (1963) 60 Cal.2d 355, 366, superseded by statute on another ground as stated in *In re Marriage of Powers* (1990) 218 Cal.App.3d 626, 636.)

There are two competing policy considerations behind section 3287(a). On the one hand, the law requires that a claim be liquidated so a party

cannot be in default for the failure to know what sum to pay. On the other hand, the law recognizes that injured parties should be compensated for the loss of use of their money from the date of the injury, a policy that "has been implemented through a generally liberal construction of 'certainty' under section 3287. [Citation.]" (*Chesapeake Industries, Inc. v. Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 907 (*Chesapeake*); see also *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 663 (*Lakin*); *Flethez v. San Bernardino County Employees Retirement Assn.* (2017) 2 Cal.5th 630, 643 (*Flethez*); *Continental, supra,* 15 Cal.App.5th at p. 1038.) These competing policy considerations have led "courts to focus on the *defendant's* knowledge about the amount of the plaintiff's claim. The fact that the plaintiff or some omniscient third party knew or could calculate the amount is not sufficient. The test . . . is: *did the defendant actually know the amount owed or from reasonably available information could the defendant have computed that amount.* Only if one of those two conditions is met should the court award prejudgment interest [under section 3287(a)]. [Citations.]" (*Chesapeake, supra,* 149 Cal.App.3d at p. 907, 2nd italics added; see also *Watson, supra*, 2 Cal.App.5th at pp. 293–294.)

The defendant's or debtor's state of actual knowledge of the amount due to the plaintiff or creditor, or ability to calculate that amount from information that is reasonably available, is thus key to the determination in a particular case as to whether damages are certain or capable of being made certain as of a particular day to entitle the plaintiff to prejudgment interest under section 3287(a). "Pursuant to the statute, if a defendant does not know or cannot readily ascertain damages, it is incumbent on the plaintiff to provide the defendant with some statement and supporting data from which the defendant can make the necessary determination. [Citation.] The fact

36

that the amount of the damages is in dispute is relevant only insofar as the dispute produces conflicting evidence from which the amount of damages cannot be ascertained with certainty. [Citation.] When . . . the amount of the damages is not in dispute, the lack of a dispute is merely a factor to be considered in the determination of whether the damages met the statutory requirement of certainty or capab[ility] of being made certain for fixing prejudgment interest. [Citation.]" (*Levy-Zentner Co. v. Southern Pacific Transportation Co.* (1977) 74 Cal.App.3d 762, 798–799 (*Levy-Zentner*).)

Thus, unlike section 3291, which makes prejudgment interest available to a plaintiff with a prevailing CCP section 998 offer in a personal-injury action, eligibility for prejudgment interest under section 3287(a) is *not* a matter of making a "simple comparison" between the judgment and the statutory offer to compromise. (*Lakin, supra,* 6 Cal.4th at pp. 662–663, fn. 13 [eligibility for interest under § 3291 is predicated on "simple comparison" between the judgment, including all the damages, and the CCP section 998 offer]; *Steinfeld, supra*, 60 Cal.App.4th at pp. 17–18.) The test is rather whether the amount of the claimant's damages was certain, or capable being made certain. In this regard, "uncertainty over the *amount* of damages" should not be confused with "uncertainty as to whether there is liability for damages in an amount that is certain." (*Cheema v. L.S. Trucking, Inc.* (2019) 39 Cal.App.5th 1142, 1151.)

Unlike section 3291, applicable only in personal-injury actions and expressly tied to CCP section 998; or section 3288, applicable "in an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud or malice;" or the discretionary section 3287, subdivision (b), applicable to actions for unliquidated damages in contract, mandated prejudgment interest under section 3287(a) for liquidated claims is not

37

expressly limited to certain types of actions. Instead, it "applies by its terms without restriction to '[e]very person who is entitled to recover damages.' " (*Levy-Zenter, supra*, 74 Cal.App.3d at p. 796, italics omitted.)

For example, section 3287(a) has been applied to allow the recovery of prejudgment interest in actions arising in mandamus, for the destruction of real property, and in inverse condemnation. (*Levy-Zenter, supra,* 74 Cal.App.3d at pp. 796–798.) It does not apply to actions under the unfair competition law (Bus. & Prof. Code, § 17200), which are for injunctive relief and restitution, not damages. (*Espejo, supra*, 13 Cal.App.5th at p. 375 [but discretionary interest may be awarded in equity as a component of restitution].) Nor does it apply in an action for wrongfully withheld wages or business expenses, where a discretionary and equitable award of prejudgment interest is available to make an injured party whole. (*Id.* at pp. 375–376.) Or to a valuation of corporate shares under the statutory buyout provisions of Corporations Code section 2000, as a corporation's election to pay the fair value of shares is not equivalent to the dissolution-seeking shareholder receiving "damages" for a detriment suffered, as damages are defined in section 3281, nor was it a sum the corporation is obligated to pay.[17] (*Crane R.R. Crane Investment Corp.* (2022) 82 Cal.App.5th 748, 759–761 (*Crane*).)

---

[17] Section 3281 " 'defines "damages" as monetary compensation for one "who suffers detriment from the unlawful act or omission of another." ' (*Flethez, supra*, 2 Cal.5th at p. 635, fn. 2, quoting § 3281 ['[e]very person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages'].)" (*Crane, supra*, 82 Cal.App.5th at p. 759.) "Under specified conditions, an award of damages [as defined by section 3281] may include an award of prejudgment interest" under section 3287(a). (*Flethez, supra*, 2 Cal.5th at p. 635, fn. 2.)

Our Supreme Court, in fact, has rejected the notion that section 3287(a)'s application is limited by the nature of the plaintiff's claim and has instead held that it provides for the general availability of interest if its conditions are met; nor is it a barrier to an award of prejudgment interest under section 3287(a) that such relief is not specifically authorized by a statute underlying the plaintiff's claims. (*Tripp v. Swoap* (1976) 17 Cal.3d 671, 681–682 [prejudgment interest under section 3287(a) available in mandate case, as there was an underlying monetary obligation, recovery was certain or capable of being made certain by calculation, and right to recovery vested on a particular day], overruled on other grounds in *Frink v. Prod* (1982) 31 Cal.3d 166, 180; *Mass v. Board of Education* (1964) 61 Cal.2d 612, 626 [section 3287(a) reaches actions in mandate brought to recover sums of money owing as a statutory obligation]; *Currie v. Workers' Compensation Appeals Board* (2001) 24 Cal.4th 1109, 1115–1117 [section 3287(a) applies to backpay awards made under Lab. Code, § 132a]; see *Flethez, supra*, 2 Cal.5th at pp. 641–642 [collection of wage, benefit, and labor cases to which section 3287(a) found to apply]; see also *Levy-Zentner, supra*, 74 Cal.App.3d at pp. 796–797.)

Thus, " 'the key distinguishing factor' " for determining section 3287(a)'s application is not, for example, " 'whether the cause of action arose in tort or contract, but rather whether the damages [are] readily ascertainable.' " (*Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 958; *Levy-Zentner, supra*, 74 Cal.App.3d at p. 795.)

Finally, as noted, prejudgment interest under section 3287(a) is generally available in matters subject to contractual arbitration, even if only from the date of the final award, which itself becomes a new contractual obligation or fixed liability regardless of the individual elements that

39

comprised that liability, to entry of judgment. (*Tenzera, Inc. v. Osterman* (2012) 205 Cal.App.4th 16, 21–23 (*Tenzera*); *County of Solano v. Lionsgate Corp.* (2005) 126 Cal.App.4th 741, 753 (*County of Solano*); *Britz, Inc. v. Alfa-Lava Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1106–1107 (*Britz*); *Pierotti v. Iorian* (2000) 81 Cal.App.4th 17, 27 (*Pierotti*).)

III.  *Neither Section 3287(a) Nor CCP Section 998, Separately or Together, Provide for Prejudgment Interest in a UIM Proceeding Premised on an Insured's Prevailing CCP Section 998 Offer*

In her briefing, below and on appeal, Glassman appears to assert that without any other showing to establish the certainty of the amount of damages in a particular case, section 3287(a) and CCP section 998 operate together to provide for recovery of prejudgment interest to an insured who makes a prevailing CCP section 998 offer in a UIM proceeding, from the date of the offer. This is because, she argues, such an offer, seemingly by itself, "is an appropriate mechanism to liquidate a contractual UIM claim" and thereby establish a right to mandatory prejudgment interest under section 3287(a). Stated differently, her asserted position is that her CCP section 998 offer, on its own, "served to establish the sum certain and date certain for purposes of her claim for prejudgment interest under [section 3287(a)]" and it "set a statutory deadline for avoiding established [prejudgment interest] repercussions."[18]

---

[18] Glassman also appears to retreat from this purely statutory argument by then coupling it with contentions about the sufficiency of the record here to establish the certainty of the amount of her damages and the date they became certain. In this regard, she states that she "does not seek a simple comparison between the [CCP s]ection 998 offer and the arbitrator's award in this case. Rather, [she] seeks application of [CCP s]ection 998 as a mechanism to establish certainty under . . . section 3287[(a)] *based on the record in this case*." (Italics added.) She further states that she "does not

40

As we read this contention, it is purely one of law involving statutory interpretation or construction and divorced from any disputed factual question. To such a claim, we apply independent review. (*California Building Industry Assn. v. State Water Resources Control Board* (2018) 4 Cal.5th 1032, 1041.) "Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.]' [Citation.]" (*Ibid.*)

We reject as lacking a legal basis the claim that section 3287(a) and CCP section 998 can be read, separately or together, to provide that a successful CCP section 998 offer sufficiently liquidates a claim for damages and establishes their certainty in a UIM proceeding for purposes of mandating an award of prejudgment interest as under section 3287(a). Neither statute provides for this, nor references the other. Their respective subject matter and purposes are different. And we find no authority to support the claim, particularly to the extent the argument would displace

---

argue that the reasonableness of the [CCP s]ection 998 offer established that [her] damages were certain. Rather, [her] position is that the policy-limit [CCP s]ection 998 offer liquidated [her] claim *and Safeco had sufficient information at that time to calculate [her] damages up to its liquidated maximum liability of $1,000,000.*" (Italics added.) And that she "does not argue that her damages were certain because the [CCP s]ection 998 offer was reasonable and in good faith. Rather, [her] position is that the [CCP s]ection 998 policy-limit offer liquidated [her] policy-limit claim for contractual UIM benefits. At the time of the [CCP s]ection 998 offer, *Safeco had sufficient information to calculate* [*her*] *damages, warranting an award of prejudgment interest under*" section 3287(*a*). (Italics added.)

For the sake of completeness, we address the purely statutory argument first, and then proceed to the alternative argument that invokes the record in this case for support.

existing law on assessing the certainty of damages for purposes of mandatory prejudgment interest under 3287(a).

First, there is no express statutory language in either section 3287(a) or CCP section 998 to suggest that these two provisions operate at all in tandem, in UIM proceedings or otherwise. And we have no legislative authority to make them do so. The Legislature showed that it knew how to tie prejudgment interest to the cost-shifting features of CCP section 998 when it wanted to, as it expressly did in section 3291 but did not in section 3287(a). " 'Where the Legislature makes express statutory distinctions, we must presume it did so deliberately, giving effect to the distinctions, unless the whole scheme reveals the distinction is unintended. This concept merely restates [a] statutory[-]construction canon: we presume the Legislature intended everything in a statutory scheme, and we should not read statutes to omit expressed language or include omitted language. As our Supreme Court stated, we "are aware of no authority that supports the notion of legislation by accident." [Citation.]' [Citation.]" (*Yao v. Superior Court* (2002) 104 Cal.App.4th 327, 333.) Based solely on the language of section 3287(a) and CCP section 998—two independent statutes—there is no legal basis for a court to read or bind them together in their application.

Second, the purpose of CCP section 998's cost-shifting features is purely to promote the legislative policy of encouraging settlement. Unrelated to this policy, section 3287(a) is a means to compensate a plaintiff for lost use of funds with prejudgment interest when damages were ascertainable to a defendant with sufficient certainty. In this, prejudgment interest under section 3287(a) is a component of damages; it is not a cost, nor is it treated as such or similarly as an obligation "arising out of [a party's] behavior as a litigant." (*Pilimai, supra*, 39 Cal.4th at p. 144; see also *id*. at p. 145; *Bodell,*

*supra*, 62 Cal.App.4th at p. 1525, fn. 14; *Warren, supra,* 30 Cal.App.5th at p. 34.)

Third, Glassman offers no legal authority or support for us to read section 3287(a) and CCP section 998 together as she urges. Contrary to her suggestion, neither the Supreme Court's holding in *Pilimai* (that section 3291 does not apply in UIM proceedings) nor in *Gourley v. State Farm Mutual Automobile Ins. Co.* (1991) 53 Cal.3d 121, 123–124 (that section 3291 does apply in insurance bad-faith actions or those for breach of the covenant of good faith and fair dealing) open the door to the result she seeks. Neither case's holding even touches on section 3287(a), and these authorities do not "invite" us to effectively substitute section 3287(a) for the inapplicable section 3291 in a UIM proceeding by attributing to a prevailing CCP section 998 offer in such a proceeding the power or proxy to liquidate damages as required by section 3287(a).

IV. *There Was a Void of Evidence Before the Trial Court Showing That Glassman's Damages Were Certain or Capable of Being Made Certain Under Section 3287(a) on the Date She Made Her CCP Section 998 Offer*

As framed by Glassman, the issue in this case is: "Under what circumstances does a policyholder's [CCP section 998 offer] serve as a mechanism to establish the requisite certainty for an award of prejudgment interest [under section 3287(a)] in UIM proceedings?" To the extent she contends that such an offer alone effectively liquidates the claim as a matter of law—by application of section 3287(a) and CCP section 998 together—to mandate an award of prejudgment interest from the date of the offer, we have rejected the claim. But, as noted, Glassman also contends that the undisputed record in this case otherwise shows that her damages were

43

certain or capable of being made certain as of the date of her CCP section 998 offer, in February 2020.

" ' "On appeal, we independently determine whether damages were ascertainable for purposes of [section 3287(a)] absent a factual dispute as to what information was known or available to the defendant at the time" [citation].' [Citation.]" (*Continental, supra*, 15 Cal.App.5th at p. 1038; accord, *Collins, supra*, 205 Cal.App.4th at p. 151.) On the record before the trial court here as it considered and denied prejudgment interest—our appellate record properly delineated—there were no facts from which it could be determined just what information on the amount of Glassman's damages—general or special—was known or reasonably available to Safeco when she made her CCP section 998 offer roughly a year before the arbitration hearing. And in the absence of any evidence on the point, we are unable to determine whether there is a true factual dispute.

A party seeking an award of prejudgment interest, at least under section 3291, bears the burden of proving entitlement thereto. (*Lakin, supra*, 6 Cal.4th at pp. 659–661.) At bottom, this stems from Evidence Code section 500, which provides that "[e]xcept as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that [the party] is asserting." We see no reason why this allocation of the burden of proof would not likewise apply to prejudgment interest under section 3287(a), especially as it is a component of compensatory damages as to which a plaintiff normally bears the burden of proof.

As we have thoroughly outlined, for a plaintiff's damages to be deemed certain or capable of being made certain on a particular day to mandate prejudgment interest under section 3287(a), the defendant must actually

44

know the amount or must have been able to compute it on the particular day from reasonably available information. (*Warren, supra*, 30 Cal.5th at p. 44; *Collins, supra*, 205 Cal.App.4th at pp. 150–151; *Cassinos, supra*, 14 Cal.App.4th at p. 1789.) The trial court here concluded that especially with Glassman's general damages for emotional distress, the total amount of her damages was not certain or capable of being made certain under section 3287(a) when she made her CCP section 998 offer. Glassman faults this conclusion, contending that her special damages alone, apart from her then undetermined general emotional-distress damages, exceeded the umbrella-policy limits when she made her CCP section 998 offer, and that Safeco then knew this, mandating an award of prejudgment interest from the offer date based on the umbrella-policy limits. That might be so, but it was not shown on this record based on the evidence before the trial court when it made its ruling.

Then before the court were Glassman's three declarations—the initial one filed with her petition, which said nothing bearing on the subject of prejudgment interest under section 3287(a); the amended one that added only the fact of her having made her CCP section 998 offer in February 2020; and her supplemental one, which contained no further facts of relevance to the issue. Glassman now contends that the final arbitration award rendered in May 2021, which is in the record, contains enough to show that Safeco knew in February 2020 when she made her offer to compromise that the undisputed amount of her special damages attributable to the accident alone exceeded the $1 million policy limits such that mandatory prejudgment interest is recoverable from that date under section 3287(a). This is not the case. She further contends that the "information available to Safeco at the

45

time of the [CCP s]ection 998 offer was the same evidence relied upon by the arbitrator . . . ." The record does not show this either.

Although the arbitrator's final award discussed the united opinions of various doctors on the extent and cause of Glassman's injuries and cited to her medical records in this regard, it is not evident from the award itself that these conclusions were derived solely from medical records available to Safeco in February 2020.

Rather, the arbitrator's conclusions appear to have been reached, at least in part, through medical testimony given at the arbitration hearing in January 2021. One cannot infer from the award alone that Safeco knew the amount of Glassman's special damages attributable to the accident in February 2020, and knew they were enough ($1,505,000) to trigger a policy-limits award in her favor. The arbitration award itself did not specifically quantify Glassman's special damages, instead determining only that her "monetary expenses" were "well over $1 million, a large part of which were covered by insurance," or, adding lost wages and future treatment, "well over" $1,374,129. The arbitrator's award discusses what appears to be the oral testimony of medical experts opining in January 2021 on Glassman's damages based on their having reviewed her medical records before giving their respective opinions. But one cannot tell what of these records had been produced to Safeco in discovery by February 2020. The arbitrator's discussion on this includes reference to the opinion of Safeco's retained IME doctor who apparently produced a report in January 2020, not in the record, which Glassman urges rendered her special damages undisputed and liquidated. But it is not apparent from the arbitration award itself just what records this doctor reviewed to reach her conclusions in January 2020 on the extent and cause of Glassman's injuries and special damages. And it cannot be said from

46

the award alone that Safeco knew then that there was and would be no conflicting evidence on the extent and cause of Glassman's special damages. Thus, the arbitrator's conclusions about the extent of Glassman's recoverable special damages and their cause may well have come from testimony elicited in the hearing itself, even with respect to the IME doctor, who testified in the arbitration hearing. There is also the *Howell* issue—unaddressed by the arbitrator—which arguably would have limited the quantification of Glassman's compensable damages for medical expenses to the lesser of the amount paid or incurred for medical services and the reasonable value of the services. (*Howell, supra,* 52 Cal.4th at p. 556.)

Glassman implicitly acknowledges the evidentiary void in the record by her efforts to augment it and her request for our independent factual finding that Safeco "possessed sufficient information to calculate [her] damages up to the $1 million policy limit at the time of" her CCP section 998 offer in February 2020. On the existing appellate record, properly scoped, there was no evidence before the trial court as it considered prejudgment interest from which it could have concluded that Safeco did indeed possess such information in February 2020 to mandate an award of prejudgment interest from the date of Glassman's CCP section 998 offer. And the arbitration award rendered in May 2021 does not illuminate the issue of the state of Safeco's knowledge or possession of all the relevant information in February 2020.

Without that evidence, and based on our independent review applying well-established law on assessing the certainty of damages, there is no factual or evidentiary basis on which to reverse the trial court's denial of prejudgment interest under section 3287(a) from the date of Glassman's CCP section 998 offer in February 2020. There is no evidence in the record that Safeco then knew or had reasonable access to information from which it could

47

have concluded with sufficient certainty that the amount of Glassman's damages, especially her special damages, were enough to trigger a $1 million policy-limits award. (*Warren, supra*, 30 Cal.App.5th at p. 44; *Chesapeake, supra*, 149 Cal.App.3d at p. 907.)

V.    *Even if Prejudgment Interest Under Section 3287 is Available in UIM Proceedings From the Date of the Final Arbitration Award, Glassman Forfeited This Claim*

As noted, Glassman's petition to confirm the arbitration award generally prayed for "interest on the [a]ward from the date of the [a]ward to the date of judgment," for "recoverable costs and interest," and for "such other and further relief as the Court may deem proper." This was sufficient to support a request for prejudgment interest in the trial court under section 3287(a). (*North Oakland, supra*, 65 Cal.App.4th at p. 829.) But in pursuit of her request for interest in the trial court, Glassman maintained throughout that her damages were certain or capable of being made certain either as of the date of her CCP section 998 offer in February 2020, or the date the offer expired in March 2020. She never articulated or argued an alternative request for prejudgment interest under section 3287(a) from the date of the arbitration award in May 2021, as she now does for the first time in her opening brief on appeal. And the trial court never made a ruling on prejudgment interest running from the date of the arbitration award. We accordingly view the alternative theory of relief as effectively abandoned in the trial court and forfeited on appeal.

A successful party to an arbitration may be entitled to post-award, prejudgment interest under section 3287(a). (*Britz, supra*, 34 Cal.App.4th at pp. 1106–1107; *Pierotti, supra*, 81 Cal.App.4th at p. 27 [interest awarded on "certain" arbitration award from date of award]; *Tenzera, supra*, 205

48

Cal.App.4th at pp. 21–22.) This is because the arbitration award itself can result in a new and fixed liability for which prejudgment interest under section 3287(a) is available. (*Pierotti*, at p. 27.) Accordingly, the successful party may be entitled to "recover damages certain" within the meaning of section 3287(a), further entitling the party to prejudgment interest on the amount of the award from the date the arbitrator renders it until the date of judgment confirming the award. (*County of Solano*, *supra*, 126 Cal.App.4th at pp. 752–754.) This theory thus rests on the award itself as liquidating the damages certain for purpose of prejudgment interest under section 3287(a).

Safeco objects to Glassman's request for prejudgment interest from the date of the arbitration award on several bases, including that no such request was pursued in the trial court; that "damages" may not exceed the policy limits in a UIM proceeding and those limits have been exhausted here; and that prejudgment interest under section 3287 is not available as a form of damages in UIM proceedings in any event.[19]

---

[19] Safeco made this latter argument below and maintains it on appeal. The argument is rooted in the definition of damages in section 3281 and the contention that a claim for compensatory damages must meet this definition to bear prejudgment interest as an additional component of damages. (See e.g., *Flethez, supra*, 2 Cal.5th at p. 635, fn. 2; *Crane, supra*, 82 Cal.App.5th at p. 759 [elective corporate buyout provisions under Corp. Code, § 2000 do not give rise to damages as defined in section 3281, so no prejudgment interest under section 3287(a) is awardable on the fair-value amount].) Safeco urges that a recovery by an insured in a UIM proceeding is not "damages" within the statutory definition. Instead, such recovery is as defined by and provided in the applicable policy of insurance and as addressed in Insurance Code section 11580.2. The arbitration award, as Safeco characterized it, "reflects the amount of policy benefits payable for damages caused by a third party (the underinsured driver), pursuant to a contractually agreed-upon procedure to determine the amount recoverable." The trial court did not specifically address the argument, deciding instead that Glassman's damages were not certain or capable of being made certain without determining the more

49

Although prejudgment interest from a later date—that of the arbitration award—might be said to be encompassed within an alternative request to a prior date, the theory of recovery for the respective dates is different here. Glassman's new alternative request is not tied to her CCP section 998 offer. Safeco had no real opportunity to address, nor did the trial court have an opportunity to rule on, a request for prejudgment interest under section 3287(a) in this UIM action from the date of the arbitration award. Thus, the trial court never ruled on Safeco's foundational legal arguments against the application of section 3287(a) in the UIM context, as summarized above. Further, Glassman does not tell us what rate of interest she seeks and, as we see it, there are issues of fact surrounding when the accrual of interest would cease—when Safeco first tendered the $1 million policy limits or when it later did so without conditions. Thus, we are being asked to rule on the request in the first instance and the issue, as presented here, is not purely one of law on undisputed facts.

" 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were [decided]. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal . . . .' [Citation.] 'New theories of defense, just like new theories of liability, may not be asserted for the first time on appeal.' [Citation.] ' "Appellate courts are loathe to reverse a

foundational question whether prejudgment interest under section 3287 is available at all in a UIM proceeding. As we otherwise find no basis to reverse the trial court's decision, we likewise need not reach the question and leave for another day whether prejudgment interest under section 3287 as a component of compensatory damages is recoverable at all in a UIM proceeding, and, if so, whether such interest may exceed the policy-limits cap.

50

judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. . . . Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to re[consider] cases on theories that could have been raised earlier. [Citation.]" (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) This rule extends to a new theory of damages; a party cannot assert one measure of damages in the trial court and another measure on appeal. (*Kantlehner v. Bisceglia* (1951) 102 Cal.App.2d 1, 6.) But the rule is relaxed in a reviewing court's discretion when a new theory pertains only to questions of law on undisputed facts, which could not be altered by the presentation of additional evidence. (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767; *Marriage of Priem* (2013) 214 Cal.App.4th 505, 510-511.)

Apart from but related to the rule against a change in theory on appeal is the rule that parties will be held to an implied waiver of an issue on appeal where the error was never asserted in the trial court. Appellate courts will not reverse for procedural defects or erroneous rulings that could have been but were not raised below. (*Doers, supra,* 23 Cal.3d at pp. 184–185; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 285–286 [court will not consider claims of error on appeal that could have been, but were not, pursued below and forfeiture may result from inaction falling short of express waiver that demonstrates acquiescence in the error].) This again is rooted in the notion that it is unfair to the trial judge and the adverse party to take advantage of an alleged error on appeal where it could have easily been corrected in the trial court. (*Doers,* at p. 184, fn. 1; *Children's Hospital & Medical Ctr. v. Bonta* (2002) 97 Cal.App.4th 740, 776–777.) The rule is justified as an invocation of the invited-error doctrine and implied waiver of

the new theory in the trial court by the appellant. (*Planned Protective Services v. Gorton* (1988) 200 Cal.App.3d 1, 12–13, disapproved on another ground in *Martin v. Szeto* (2004) 32 Cal.4th 445, 451, fn. 7; but see *Pierotti, supra*, 81 Cal.App.4th at p. 28 [no implied waiver where appellant asserted additional and alternative grounds in trial court for the prejudgment interest sought].)

We conclude that by never expressly articulating a request for prejudgment interest in the trial court under section 3287(a) from the date of the final arbitration award, even as an alternative theory, Glassman has forfeited the claim, which in any event involves more than a simple calculation from undisputed factual information contained within the properly delineated record.

## DISPOSITION

The judgment is affirmed. Respondent Safeco is entitled to costs on appeal by operation of California Rules of Court, rule 8.278(a)(1) and (2).

_____
WILLIAMS, J.*

WE CONCUR:

_____
GROVER, ACTING P.J.

_____
LIE, J.

*Glassman v. Safeco Insurance Company of America*
H049825

_____

    * Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                                      Santa Clara County Superior Court
                                                  Superior Court No.:  21CV383782


Trial Judge:                                      The Honorable Peter H. Kirwan




Attorneys for Plaintiff and Appellant:            Sherry A. Glassman,
                                                  In Propria Persona




Attorneys for Defendants and                      Delmer, Armstrong & Rowland,
Respondent:  Safeco Insurance                     LLP
Company of America
                                                  John R. Brydon
                                                  George A. Otstott
                                                  Lisa A. Pan

*Glassman v. Safeco Insurance Company of America*
H049825